## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ANDY TROY LE WILLIAMSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-2538-KHV** |
| | ) | |
| **DELUXE FINANCIAL SERVICES,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Andy Troy Le Williamson, *pro se*, brings suit against his former employer, Deluxe Financial

Services ("Deluxe") and several of its employees, alleging that defendants terminated his employment

for taking leave under the Family and Medical Leave Act ('FMLA"), 29 U.S.C. § 2601 et seq.[1]  This

matter is before the Court on defendants' Motion For Summary Judgment (Doc. #83) and defendants'

Motion For Partial Summary Judgment On Plaintiff's Claim For Punitive Damages (Doc. #85), both filed

March 18, 2005.  For reasons stated below, defendants' motions are sustained.

### Factual Background

Plaintiff's opposition brief does not set forth the specific fact paragraphs in defendants'

memorandum that he disputes, and plaintiff does not specifically contradict defendants' factual

assertions with reference to those portions of the record on which he relies.  See D. Kan. Rule 56.1.[2]

---

[1]      The individual defendants are Janelle Harvey-Jordan, Ruth Ann Lewis and Keith
Derks.

[2]      D. Kan. Rule 56.1 provides as follows:

(continued...)

Also, plaintiff does not set forth additional facts in separately numbered paragraphs. Defendants have nonetheless responded to plaintiff's additional factual statements, by assigning numbers on a copy of plaintiff's memorandum. See Reply Memorandum In Support Of Defendants' Motion For Summary Judgment (Doc. #89) filed May 4, 2005, Ex. A.

The Court recognizes that pro se litigants should not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. See Woods v. Roberts, No. 94-3159, 1995 WL 65457, at *2 (10th Cir. Feb.17, 1995); Hass v. U.S. Air Force, 848 F.Supp. 926, 929 (D. Kan. 1994). The Court has therefore searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment for defendants. Where supported by the record, the Court has included plaintiff's additional facts and construed them in the light most favorable to plaintiff. For purposes of defendants' motion for summary judgment, the following facts are uncontroverted, deemed admitted, or where disputed, set forth in a light most

---

[2](...continued)
> (b) Opposing Memorandum.
>
> (1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.
>
> (2) If the party opposing summary judgment relies on any facts not in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply.

favorable to plaintiff.

The Parties

Plaintiff began work as a customer support specialist for Deluxe in September of 1999. In 2001, plaintiff worked in the Southeast Sales Region Customer Support Division in Overland Park, Kansas. Plaintiff reported to Ruth Ann Lewis, Group Lead for Southeast Sales. Lewis' group included about 20 employees who provided customer support and issue management services to support the Deluxe sales force and bank set-up for customers. Lewis reported to Keith Derks, Director of Client Data Management at the Overland Park facility. In 2001, Janelle Harvey-Jordan was the human resources manager for the Customer Support facility in Overland Park. Derks, Lewis and Harvey-Jordan have never held corporate officer positions with Deluxe. Pat Harrington was the Group HR Manager for Customer Care at a Deluxe facility in Phoenix, Arizona.

Deluxe Employment Policies

Deluxe required employees to obtain advance approval for scheduled time off. In 2001, the attendance policy provided that employees could be disciplined based on the number of "Incidents" (absences that were not scheduled and approved 24 hours in advance) and "Occurrences" (failing to clock in or out). Absenteeism and Tardiness Policy: Ex. 39; Time-Off Newsletter: Ex. 40; Harvey-Jordan Declaration ¶ 9: Ex. 51. The policy provided that before Deluxe would terminate an employee, it would give the employee a formal written warning for excessive unscheduled absences.

The Deluxe human resources policy manual provided that an employee is responsible for calling his functional manager within 30 minutes before start time to advise him or her of an unscheduled absence or lateness. The manual does not specify a particular discipline for failure to call. It provides, however, that Deluxe reserves the right to invoke discipline, up to and including termination, at any time.

Plaintiff believed that Deluxe had no policy which required him to call in ahead of time for unexpected lateness or absence. He believed that an employee had no obligation to call if he "wasn't late like most of the day." Williamson Dep. 40-41: Ex. 50. He understood, however, that an employee must call "any co-worker, your supervisor or any manager" as "soon as possible" to report that he would will be absent or late. Williamson Dep. 33, 34: Ex. 50.

Plaintiff's Employment Record

On July 3, 2000, plaintiff did not show up for work or call his supervisor, Greg Williams. On July 5, 2000, plaintiff was scheduled to work and left a voice message that he would not be coming in that day. On July 6, 2000, Williams told plaintiff that he had to call every day if he was scheduled to work, i.e., did not have leave approved in advance, and was not coming to work. Williams warned plaintiff that if he was again absent from work without calling, Deluxe would take disciplinary action up to and including termination.

On February 23, 2001, plaintiff missed work to see his doctor. Lewis, his supervisor at that time, reminded plaintiff that he needed to call when he would not be in as scheduled, so that she could plan workflow. Lewis told plaintiff that even though he disagreed with the policy, she expected him to follow it.

Between June 5 and July 12, 2001, plaintiff worked 9 full days and 3 partial days, and was absent the remaining work days. On June 5, plaintiff called Lewis at 7:30 a.m. He told her that he would be late, but he never went to work that day. On June 11, plaintiff told Lewis that because he had relationship problems, he would be absent "indefinitely." On June 12, plaintiff saw therapist Jeff Crawford, who gave him a note excusing him from work from June 4 through June 20, 2001. On June 18, 2001, Deluxe

4

sent plaintiff an FMLA notice letter and an FMLA medical certification form.  The FMLA notice directed plaintiff to return the completed medical certification form no later than 15 days after he received the notice.

During 2001, The Hartford was a third-party administrator of Deluxe's short-term disability plan. The Hartford independently determined whether a Deluxe employee was entitled to short-term disability benefits, based on medical information which the employee or the employee's health care provider provided.  The Hartford approved short-term disability benefits for plaintiff for June 5 through June 19, 2001.  Plaintiff returned to work on June 21, 2001.

On June 27, 2001 plaintiff sent an e-mail to his team members.  It was titled "Welcome Back!" and stated as follows:

> I would like to say thanks.  Thanks for leaving me in the IMS distro by myself after 12:00 pm.  Thanks for the extra work last week.  Makes me wonder why I missed so many days from the start.

6/27/2001 Williamson e-mail: Ex. 14; Lewis Declaration ¶ 12: Ex. 52.  Plaintiff worked a few days in early July, then stopped working again on July 13.  From July 13 to September 17, 2001, plaintiff did not work at all.[3]  He saw a counselor, James Roberts, who refused to provide medical certification that plaintiff was medically unfit to remain off work.  On July 19, Lewis and Harvey-Jordan called plaintiff to tell him that he was on final warning for absences because he had not returned his FMLA paperwork.  Plaintiff said

---

[3]       Plaintiff does not recall any of his daily activities during his extended absence, other than fishing (one time), visiting a Deluxe co-worker when she had a party, contacting his doctors and writing letters to his college professors.

During this time, plaintiff may have participated in college classes at Park University.  He initially testified that he did not attend college classes during his absence and "did not do any work." He then testified that he participated in on-line classes during August and September.  He later testified that he did not take classes in August and September but that he participated in classes in June and July of 2001.

that he thought he would return to work on July 23.  Within a few days, plaintiff told Lewis that he had

seen a doctor, but that the doctor would not write an excuse to cover his absences.  On July 24, Deluxe

sent plaintiff a second FMLA notice.

On August 9, 2001, The Hartford denied plaintiff's request for short-term disability benefits

because it had not received medical information to support the request.  Plaintiff saw Dr. Cedric Fortune

on August 2 and 16.  On August 10, plaintiff sent The Hartford a note signed by Dr. Fortune.  Dr.

Fortune diagnosed plaintiff with depressive anxiety and stated that plaintiff was unable to work for a

period of six weeks beginning July 13, 2001.

On August 16, 2001, Deluxe sent plaintiff a third FMLA notice.  On August 29, The Hartford

granted plaintiff short-term disability benefits to August 31, and Deluxe approved as FMLA leave the

absences from July 13 to August 31.  Although Deluxe expected plaintiff to return to work on August 31,

he did not.

During the week of September 3, 2001, plaintiff agreed to call Lewis before the start of his shift

on September 10 to let her know whether he would becoming back to work that day.  On September 10,

plaintiff called Lewis almost two hours after his shift began and said that he would not be in.  Lewis

reminded plaintiff that he was required to notify her by his starting time whether he was going to return

to work.  Plaintiff said that he had a doctor's appointment later that day.  Lewis asked plaintiff if he

thought that there was a chance he would be back that week and he said, "no."  Lewis asked plaintiff to

follow up with her once he talked with his doctor because his short-term disability was not approved past

August 31, 2001.  Plaintiff stated that he understood that he was responsible to call before his shift when

he would not be in.

On September 11, 2001, plaintiff saw Dr. Fortune, who completed a form stating that plaintiff

suffered from depression and was approved to return to work on September 17.  On September 13, plaintiff left a voice message for Lewis, stating, "I've got bad news for you – the bad news is that I will be back next Monday and you will have to put up with me – I guess."  On September 17, plaintiff returned to work.  Although Deluxe had not yet received any FMLA medical certification, it approved his extended absence as FMLA leave.  Deluxe also removed the disciplinary incidents which plaintiff had received for his absences.[4]

On September 17, 2001, Lewis sent the following e-mail to all team members regarding plaintiff's return to work:

> Today, Troy joins in the Southeast. You may want to take a few moments to welcome him back and bring him up to date with activities within our team.

9/17/2001 Lewis e-mail: Ex. 27; Lewis Declaration ¶ 27: Ex. 52.  Plaintiff responded with the following e-mail:

> Hi Team, Thanks for all your help and support. I would say I missed the place, but let's keep it real.  Who misses work!  On the other hand, I do miss the friends, therefore it makes it worth while coming back to work.

9/17/2001 Williamson e-mail: Ex. 27; Lewis Declaration ¶ 28: Ex. 52.  That same day, Lewis and Derks met with plaintiff.  They stressed that if plaintiff was scheduled to work but was not going to be at work, he must let Lewis know because "if [you say you are] going to be here, we, as a business, are planning on that."  Derks mentioned that there were a couple of times when plaintiff had said that he was going to return to work, and then did not.  Derks explained that plaintiff had to keep Lewis informed when he was going to be out, and that it was plaintiff's responsibility to call her.

---

[4]      On September 26, 2001, plaintiff faxed to The Hartford and Deluxe the FMLA medical certification form which Dr. Fortune had signed on September 11.  On September 28, The Hartford extended plaintiff's short-term disability to September 16.

On September 18 – the day after plaintiff returned to work following his two-month absence – plaintiff asked to leave early to complete a final exam. On September 21, plaintiff was scheduled for a one-on-one conference with his supervisor, but he did not show up.

On October 23, 2001, Deluxe approved plaintiff's request to leave work early (at 1:30 p.m. on October 24) to take a test. On October 24, plaintiff did not show up for work as scheduled, at 8:00 a.m. He therefore missed a regularly scheduled monthly team meeting that morning. Plaintiff called at 10:15 a.m. and left a voice message that he was coming in late. He arrived at work at 11:57 a.m. and left at 1:30 p.m.[5] That day, Lewis conferred with Derks and Harvey-Jordan about terminating plaintiff's employment. The group reviewed documents concerning plaintiff's history of not calling in when he was scheduled to be at work and was going to be late or absent. Lewis, Derks, Harvey-Jordan and Harrington decided to terminate plaintiff's employment. On October 25, Lewis told plaintiff that Deluxe was terminating his employment because he did not call his supervisor before the start of his scheduled shift when he was going to be late on October 24, 2001.[6]

In the pretrial order plaintiff identified two Deluxe employees – Danielle Gatlin and Kimberly Johnson – who were not discharged even though they went in late on several occasions without calling before their scheduled times. Plaintiff has not produced any admissible evidence, however, to support this assertion.[7]

---

[5]    No one at Deluxe asked plaintiff why he came in late. After it terminated plaintiff, Deluxe found out that plaintiff stated that he was late that day because he had overslept.

[6]    Deluxe did not discharge plaintiff for violating Deluxe's attendance policy regarding the number of "Incidents" or "Occurrences." Rather, it terminated his employment for not calling to notify his manager of unscheduled time off.

[7]    Plaintiff offers unauthenticated unsworn statements regarding these two employees.
(continued...)

In 2001, Deluxe granted FMLA leave to approximately 40 employees in the Customer Support Department where plaintiff worked.  At least six of those persons received more FMLA leave time than plaintiff did.  Deluxe employees who received FMLA leave in 2001 received leave time which ranged from 1.8 hours to more than 800 hours of leave.  Of the employees who took FMLA leave in 2001, plaintiff is the only employee who was discharged within 60 days of return from FMLA leave.

Plaintiff asserts that Deluxe terminated his employment because he asserted FMLA rights. Defendants assert that they are entitled to summary judgment because plaintiff cannot show that the stated reason for termination was pretextual.  The individual defendants, Janelle Harvey-Jordan, Ruth Ann Lewis and Keith Derks, alternatively contend that they are entitled to summary judgment because as a matter of law they are not employers under the FMLA.  Finally, defendants assert that they are entitled to summary judgment on plaintiff's claims for punitive damages because the FMLA does not authorize such damages.

## **Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of

---

[7](...continued)
The Court will not consider these documents.  See Stevens v. Deluxe Fin. Servs., Inc., 199 F. Supp.2d, 1128, 1122 n.6 (D. Kan. 2002).

evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on his pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment.  See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  See Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

### Analysis

Defendants assert that they are entitled to summary judgment because Deluxe has articulated a legitimate, non-retaliatory reason for termination and plaintiff cannot show that it is pretextual.  The individual defendants contend that they are also entitled to summary judgment because as a matter of

law they are not employers under the FMLA.  Finally, defendants assert that in any event they are entitled to summary judgment on plaintiff's claims for punitive damages because the FMLA does not authorize such damages.

## I.     Evidence of Pretext

Plaintiff alleges that Deluxe terminated his employment in retaliation for using FMLA leave. Defendants assert that Deluxe had a legitimate, non-retaliatory reason to terminate his employment and that plaintiff has not met his burden of showing a genuine dispute of material fact whether that reason is pretextual.  Plaintiff responds that the temporal proximity between his FMLA leave and his termination creates a genuine issue of pretext which precludes summary judgment.

When analyzing FMLA retaliatory discharge claims, the Tenth Circuit applies the familiar burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Richmond v. ONEOK, Inc., 120 F.3d 205, 208 (10th Cir. 1997).  To establish a prima facie case of retaliatory discharge under the FMLA, plaintiff must show that (1) he engaged in activity protected by the act; (2) he subsequently suffered adverse action by the employer; and (3) a casual connection connects the protected activity and the adverse employment action.  See id. at 209.  Defendants concede that plaintiff has established a prima facie case.  See Memorandum In Support Of Defendants' Motion For Summary Judgment (Doc. #84) at 21.

Under McDonnell Douglas, once plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for its actions.  See Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1116 (10th Cir. 2001).  If defendant articulates a facially legitimate reason, the burden shifts back to plaintiff to present evidence that defendant's proffered reason is pretextual, that is, "unworthy of belief."  Id. at 1120.  Here, defendants assert that Deluxe terminated plaintiff's

employment because he did not call his supervisor when he was going to be late on September 24, 2001. If true, this reason constitutes a legitimate non-discriminatory reason.

To survive summary judgment, plaintiff must produce evidence that defendants terminated his employment because he took FMLA leave. Plaintiff contends that when viewed in totality, the following circumstantial evidence raises a genuine issue of material fact whether defendants' reason was pretextual: (1) close temporal proximity between plaintiff's return from FMLA leave and the termination of his employment; (2) company policy, which did not provide that employees could be fired for failing to call in for unscheduled tardiness or absence from work; (3) defendants' failure to warn him that failure to call in when he was going to be late could lead to termination; and (4) defendants' failure to discipline him on past occasions when he did not call in on a day when he had an unscheduled tardy or absence. Defendants respond that close temporal proximity, standing alone, is insufficient to rebut their evidence of a legitimate, non-discriminatory reason for termination.  Defendants also argue that plaintiff has produced no other admissible evidence that its proferred reason is pretextual.

The Court agrees that plaintiff has produced no evidence that company policy prohibited Deluxe from terminating employees for failure to call in for unscheduled tardiness or absence from work. Furthermore, plaintiff has produced no evidence that Deluxe failed to warn him that he could be fired if he did not call.  Deluxe has produced evidence that it required employees to notify their supervisors when they were not going to report on time on days when they were scheduled to work, and that it could terminate employees for failing to do so.  Plaintiff also asserts that Deluxe did not discipline him for prior breaches, but Deluxe points to evidence that when plaintiff did not call in to report that he would be late or absent, plaintiff's supervisor informed him that he needed to do so.  On several occasions, plaintiff's supervisor reprimanded him verbally or in writing.  While Deluxe did not fire him on those

occasions, such oral or written reprimands do constitute disciplinary action.

As for temporal proximity between protected activity and termination of employment, evidence of temporal proximity may give rise to an inference of retaliation and may be probative evidence of a retaliatory motive.  See id. at 1398.  The question is whether temporal proximity *standing alone* is sufficient to raise a genuine issue of pretext.  This Court recently addressed just this question in Hysten v. Burlington Northern Santa Fe, No. 01-2296-KHV, 2005 WL 1388043 (D. Kan. June 10, 2005).  The Court noted that temporal proximity is sufficient to establish the casual connection element of a prima facie case, but that generally the Tenth Circuit has indicated that it is not sufficient – standing alone – to raise a genuine issue of pretext.  See Annett v. Univ. of Kan., 371 F.3d 1233 (10th Cir. 2004); Pastran v. K-Mart Corp., 210 F.3d 1201 (10th Cir. 2000); Vigil v. Colo. Dep't of Higher Educ., 1999 WL 407479 (10th Cir. June 21, 1999) (unpublished opinion) (temporal proximity of adverse employment action may cast doubt on defendant's termination justification but is not dispositive of pretext analysis).  In Annett, the Tenth Circuit expressly declined to allow very close temporal proximity to operate as a proxy for the more demanding evidentiary requirement in the pretext analysis.  371 F.3d at 1241.

After a defendant has proffered a legitimate nonretaliatory reason for an adverse employment action, a plaintiff who survives summary judgment typically shows more than temporal proximity.  See, e.g., Sanjuan, 160 F.3d 1291 (evidence of pretext shown through temporal proximity, defendant's "cost per injury" goals and accident-free incentive programs and plaintiff's testimony regarding mistreatment); McClurg v. GTECH Corp., 61 F. Supp.2d 1150, 1164 (D. Kan. 1999) (issue of pretext established by temporal proximity of less than two months, mention of workers' compensation claim in termination meeting, defendant's decision not to forward medical bill for payment and termination of employee after error on first attempt to type in new computer program command); Austin v. Haaker, 76 F. Supp.2d 1213

13

(D. Kan. 1999) (temporal proximity established causal connection; ambiguity in employment agreement created genuine issue of material fact); Chaparro v. IBP, Inc., 873 F. Supp. 1465 (D. Kan. 1995) (evidence of temporal proximity, defendant's refusal to excuse absence despite doctor's note, change of absences from excused to unexcused, assignment of employee to job that employer knew employee could not perform). In cases where temporal proximity alone is offered as evidence of pretext, courts typically have granted summary judgment in favor of defendant. See Pacheco v. Whiting Farms, Inc., 365 F.3d 1199 (10th Cir. 2004) (summary judgment affirmed where no evidence of pretext except adverse employment action within two months of protected activity); Lewis v. Oklahoma ex rel. Bd. of Regents, 42 Fed. Appx. 160, 2002 WL 1316810 (10th Cir. June 18, 2002) (unpublished opinion) (summary judgment affirmed where temporal proximity shown but other evidence did not support inference of pretext); Conner, 121 F.3d 1390, 1396 (10th Cir. 1997) (granting summary judgment where no evidence of pretext aside from temporal proximity); Robinson v. Wilson Concrete Co., 913 F. Supp. 1476 (D. Kan. 1996) (timing of termination alone insufficient to show pretext).

When evaluating pretext, the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs. Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004); Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Furthermore, the Court's role is to prevent unlawful employment practices, not to second guess employers' business judgments. Simms v. Oklahoma, 165 F.3d 1321, 1329 (10th Cir. 1999). Here, the only fact which might support an inference of retaliatory motive is the close connection in time between plaintiff's return from FMLA leave on September 17, 2001 and his termination five weeks later, on October 25, 2001.

The Tenth Circuit has clearly stated in multiple opinions that temporal proximity gives rise to an inference of retaliation but that it is not sufficient – standing alone – to raise a genuine issue of pretext. As this Court noted in <u>Hysten</u>, an arguable exception is <u>Foster v. AlliedSignal</u>, 293 F.3d 1187 (10th Cir. 2002). To the extent that opinion implies that temporal proximity is sufficient for purposes of the pretext analysis, it appears to be inconsistent with both prior and subsequent Tenth Circuit opinions. <u>See</u> <u>Annett</u>, 371 F.3d at 1233; <u>Pastran</u>, 210 F.3d at 1201.

In <u>Foster</u>, plaintiff suffered a work-related injury and did not report to work for several days. 293 F.3d at 1191. She later filed a workers' compensation claim, and the employer fired her nine days later, <u>id.</u> at 1191-92, allegedly for violating attendance policy. Plaintiff filed suit, claiming that the employer had retaliated against her for filing a workers' compensation claim, in violation of Kansas law. The district court granted summary judgment in favor of defendant, and the Tenth Circuit reversed. In doing so, it stated as follows:

> In order to affirm summary judgment for AlliedSignal, we must conclude that Foster "failed to produce any evidence from which a reasonable inference could be drawn" that AlliedSignal's proffered reasons for her firing were pretextual. Particularly given that "[c]lose proximity in time may provide some probative evidence of retaliatory intent," we cannot conclude that Foster has failed to meet her burden at the summary judgment stage.

<u>Id.</u> at 1196 (citations omitted). The Tenth Circuit emphasized that in addition to temporal proximity, plaintiff had presented evidence that (1) her absences were due to a work-related injury, and (2) company personnel either knew or should have known the absences were work-related. <u>Id.</u> at 1195-96. The latter factors seem to merely reiterate two elements of plaintiff's prima facie case which were not at issue in <u>Foster</u>. Therefore it is difficult to ascertain what evidence, in addition to temporal proximity and the other elements of her prima facie case, allowed plaintiff to escape summary judgment. This Court

15

cannot reconcile <u>Foster</u> with <u>Annett</u> and <u>Pastran</u>, but it confines it analysis to the context in which it arose: a claim for retaliatory discharge under the common law of the state of Kansas.

As noted, in this case the only evidence of pretext is the temporal proximity between plaintiff's return from FMLA leave and his termination.  Plaintiff returned on September 17, 2001 and Deluxe terminated his employment on October 25, 2001.  This time (approximately five weeks) is not as close as in <u>Foster</u> (in which the employer terminated plaintiff's employment within a week of notice that she had filed a worker's compensation claim).  Also, it is not as close as in <u>Hysten</u> (where defendant initiated the investigation which led to plaintiff's termination immediately after he stated that he had suffered a work-related injury forty-five days earlier).  Here, temporal proximity, standing alone, does not raise a genuine issue of material fact whether Deluxe's preferred reason for firing plaintiff was pretextual. Defendants are therefore entitled to summary judgment.

## II.     **Individual Defendants as Employer Under FMLA**

The individual defendants assert that they are not subject to FMLA liability because they are not employers under the FMLA.  Under the FMLA, the term "employer" includes "any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii)(I). The FMLA regulations provide that this definition applies to "individuals such as corporate officers acting in the interest of an employer."  29 C.F.R. § 825.104(d) (same standard as "employer" under the Fair Labor Standards Act, 29 U.S.C. § 203(d)).

Lewis supervised about 20 employees.  She reported to Derks, who was director of client data management at the Overland Park facility.  Harvey-Jordan was HR Manager for the Customer Support facility in Overland Park.  Derks, Lewis and Harvey-Jordan have never held corporate officer positions with Deluxe.  They did not have sufficient responsibility or stature within Deluxe to warrant the

16

imposition of personal liability under the FMLA.  See Brunelle v. Cytec Plastics, Inc., 225 F. Supp.2d 67 (D. Me. 2002) (front-line supervisor who was personally responsible for decisions that contributed to denial of FMLA leave not prominent enough player in employer's operations to be considered "employer" under FMLA); see Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991) (under economic reality test, corporate officer with operational control of corporation's covered enterprise was employer under FLSA).  The Court agrees that the individual defendants are not "employers" under the FMLA, and that they are entitled to summary judgment for this additional reason.

## III.  **Punitive Damages**

Defendants alternatively assert that they are entitled to summary judgment on plaintiff's claim for punitive damages because punitive damages are not recoverable under the FMLA.  The FMLA, 29 U.S.C. § 2617 provides for damages equal to

> (i) the amount of–
> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;
> (ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and
> (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively[.]

28 U.S.C. § 2617(a)(1)(A).  The statute limits recovery to actual monetary damages plus liquidated damages.  See Walker v. UPS, 240 F.3d 1268, 1278 (10th Cir. 2001) (recovery under FMLA limited to

17

actual monetary loss).  Defendants are entitled to summary judgment on plaintiff's claim for punitive damages.

**IT IS THEREFORE ORDERED** that defendants' Motion For Summary Judgment (Doc. #83) and defendants' Motion For Partial Summary Judgment On Plaintiff's Claim For Punitive Damages (Doc. #85) both filed March 18, 2005 be and hereby are **SUSTAINED**.

Dated this 6th day of July, 2005 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge